IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

```
VFT, LLC,                        *
                                 *
     Plaintiff,                  *
                                 *
     v.                          *      CV 622-016
                                 *
NUTRIEN AG SOLUTIONS, INC.,      *
                                 *
     Defendant.                  *
```

O R D E R

Before the Court is Defendant Nutrien Ag Solutions, Inc.'s ("Nutrien") motion to stay proceedings and compel arbitration. (Doc. 10.) For the following reasons, the motion is **GRANTED**.

I. BACKGROUND

VFT filed suit against Nutrien on February 24, 2022, bringing claims for breach of contract, open account, account stated, unjust enrichment, and quantum meruit. (Compl., Doc. 1.) The Complaint alleges that Nutrien contracts with landowners in the United States to treat their land with agricultural products to control the growth of undesirable species of plants. (Id. at 2.) VFT is in the business of aerial chemical application and acts as a subcontractor for Nutrien performing chemical application for Nutrien's customers. (Id.)

Nutrien and VFT enter into yearly service agreements. (Id.) Under these agreements, VFT provides aerial application services

for Nutrien's customers, sends Nutrien invoices, and Nutrien is required to pay the invoices within 30 days of receipt. (Id.) Around July 12, 2021, the Parties entered into an agreement to last through July 2022 (the "2021 Agreement"). (Id.) From August 2021 to October 2021, VFT performed aerial application services for Nutrien's clients in Indiana, Virginia, and Georgia, with the primary application in Toombs County, Georgia. (Id.) VFT provided Nutrien invoices for these services (the "Invoices") totaling $715,934.60, and Nutrien failed to pay them. (Id. at 2-3.) On November 19, 2021, VFT served Nutrien a demand letter requesting the outstanding balance under the Invoices be paid within ten days, but Nutrien did not respond and did not pay. (Id. at 3.) Therefore, VFT alleges Nutrien is in default under the 2021 Agreement. (Id.)

In response to VFT's Complaint, Nutrien filed the motion to stay and compel arbitration. (Doc. 10.) In this motion, Nutrien provides additional background regarding the Parties' relationship. Specifically, Nutrien alleges the Parties also entered into a service agreement on July 16, 2020 (the "2020 Agreement") and VFT provided warranties under the 2020 Agreement, including that it would properly clean all equipment between applications and between applications of different products. (Id. at 2-3.) Further, VFT agreed to indemnity, defend, and hold Nutrien harmless from any claims arising out of the breach of warranties and representations made by VFT and for VFT's

2

performance under the 2020 Agreement. (Id. at 3.) The 2020 Agreement also required VFT to maintain aircraft liability insurance, including drift liability coverage, and aviation general liability insurance. (Id.)

On May 19, 2021, VFT acted under the 2020 Agreement and applied chemical products to multiple wheat fields belonging to Nutrien customers in Indiana. (Id.) After the application, several growers informed Nutrien the application caused significant loss to their crops, damaging approximately 995 acres. (Id.) After sampling and testing its customers' fields, Nutrien confirmed VFT's application damaged the crops. (Id.) Nutrien sent VFT a letter on August 5, 2021 to notify it of the defense it tendered for the customers' wheat damage claims. (Id.) Then on October 8, 2021, Nutrien demanded VFT agree to pay the full value of its customers' losses, and notified VFT it also breached the 2020 Agreement because its insurance policy limits were insufficient to fully cover the losses. (Id. at 3-4.) Nutrien alleges VFT failed to honor its indemnification obligations and pay the damages. (Id. at 4.) Nutrien ultimately settled with ten of its customers. (Id.)

Due to the May 2021 dispute, Nutrien alleges VFT's current claims are intertwined with its right to offset any debt allegedly owed to VFT under the 2021 Agreement with the settlement proceeds paid to its Indiana customers. (Id.) Further, Nutrien argues "VFT's claims fall squarely within the arbitration provision –

3

they arise out of the 2021 Agreement," and it "is exercising its right to arbitrate under the Agreements and submitting the parties' dispute to the American Arbitration Association (AAA)." Id.

The 2021 Agreement contains a provision entitled "Governing Law; Arbitration" which provides:

> This Agreement shall be governed by the laws of the state in which the Work is to be performed. In the event a controversy or claim, whether based in contract, tort or any other legal theory, arises out of the Agreement or relates to the business relationship between Contractor and NAS (or NAS' affiliates, employees, agents, assigns or successors in interest), NAS in its sole discretion, regardless of which party alleges the controversy or claim, may opt to submit the claim to binding arbitration, and Contractor irrevocably consents to resolving the controversy or claim pursuant to such arbitration. If NAS chooses arbitration, it shall be: (i) subject to the current commercial dispute rules and supervision of the American Arbitration Association and the Federal Arbitration Act; (ii) held in a location best suited for the resolution of the dispute in light of the convenience of the parties and their documents and witnesses, or failing agreement on such place, in the nearest large city located in the state where the Work is primarily performed, (iii) held before a single arbitrator knowledgeable in the agricultural sales and distribution business, and (iv) governed by federal procedural laws relating to arbitration, including the Federal Rules of Civil Procedure relating to discovery. The arbitrator's decision and award shall be final and binding and may be entered in any court having jurisdiction thereof. Each party shall pay all of its associated costs, expenses and attorney's fees. The parties shall share equally the cost of the arbitrator and any accountants or advisors that the Parties agree to employ for the benefit of the arbitrator. In the event that NAS does not choose to arbitrate a particular controversy or claim, the Parties agree that any cause of action arising out of such controversy or claim shall be brought in federal or state courts located in the primary state where the Work is performed and the Parties consent and irrevocably submit to the jurisdiction and proper venue of those courts.

4

(Doc. 1-1, at 6-7.)

The 2020 Agreement, which is not the basis of this suit, contains an identical arbitration provision. (Doc. 10-1, at 6-7.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") "embodies a liberal federal policy favoring arbitration agreements." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (internal quotations and citations omitted). The FAA requires courts to "rigorously enforce agreements to arbitrate." Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)). The Supreme Court has "made clear that the strong federal preference for arbitration of disputes expressed by Congress in the [FAA] must be enforced when possible." Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1258 (11th Cir. 2003). Further, the Supreme Court found "the FAA applies to all arbitration agreements involving interstate commerce, including employment contracts . . . ." Id. at 1258 n.2 (citing Cir. City Stores, Inc. v. Adams, 532 U.S. 105 (2001)).

"[T]he party seeking to compel arbitration has the initial burden of producing the arbitration agreement and establishing the contractual relationship necessary to implicate the FAA and its provisions granting [the court] authority to dismiss or stay [the

5

plaintiff's] cause of action and to compel arbitration." Compere v. Nusret Miami, LLC, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019) (citation and internal quotation marks omitted). If the party for arbitration meets its burden of production, the burden shifts to the party opposing arbitration to show why the court should not compel arbitration. Bhim v. Rent-A-Ctr., Inc., 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009).

## III. DISCUSSION

As an initial matter, the Court has subject matter jurisdiction over this dispute through diversity jurisdiction. 28 U.S.C. § 1332.[1] The amount in controversy is more than $75,000, and the Parties are citizens of different states. (Compl., at 1.)

Since the filing of Nutrien's motion to stay and compel arbitration, the Parties have conferred and agreed to stay this case pending arbitration. (See Doc. 18, at 2.) Although the Parties have agreed to arbitrate, they are unable to agree as to the proper location to do so. (Id.) VFT requests the Court hold that the Parties shall arbitrate in the nearest large city that the AAA has a presence in Georgia, specifically Atlanta, because Georgia is the state in which it primarily performed the work relating to its claims against Nutrien. (Id.) In response,

---

[1] The FAA "does not confer subject matter jurisdiction nor does it create independent federal question jurisdiction." Sunpoint Sec., Inc. v. Porta, 192 F.R.D. 716, 718 (M.D. Fla. 2000) (citation omitted). Therefore, "[i]ndependent grounds for subject matter jurisdiction must be demonstrated." Id.

6

Nutrien argues VFT's request exceeds the scope of the Parties' arbitration provision and is therefore improper for the Court to consider. (Doc. 20, at 1.) Nutrien asks the Court to deny VFT's request, grant its motion, and stay these proceedings pending arbitration. (Id.)

The Parties' arbitration provision provides the arbitration shall be "held in a location best suited for the resolution of the dispute in light of the convenience of the parties and their documents and witnesses, or failing agreement on such place, in the nearest large city located in the state where the Work is primarily performed." (Doc. 1-1, at 6.) The Eleventh Circuit has held that "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." Bamberger Rosenheim, Ltd. v. OA Dev., Inc., 862 F.3d 1284, 1288 (11th Cir. 2017) (quoting Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1109 (11th Cir. 2004)). Since the Parties agree arbitration is appropriate, there is little left for the Court to decide. The Court will leave the determination as to proper venue up to the arbitrator because such a question falls into the category of arbitrable procedural questions. See id. Therefore, the Court grants Nutrien's motion to compel arbitration.

Nutrien also moves to stay this case pending arbitration. (See Doc. 10, at 8.) VFT agrees the Court should stay this action pending arbitration. (See Doc. 18, at 3.) Section 3 of the FAA

7

provides that once a district court is "satisfied that the issue[s] involved in [a] suit . . . [are] referable to arbitration," the district court "shall on application of one of the parties stay the trial of the action" until the arbitration is complete. 9 U.S.C. § 3. The Parties have agreed that this case should be arbitrated; therefore, the Court stays this case pending arbitration.

## IV. CONCLUSION

For the foregoing reasons, Nutrien's motion to stay and compel arbitration (Doc. 10) is **GRANTED**. **IT IS HEREBY ORDERED** that the Parties **SHALL ARBITRATE** all claims raised in this dispute, and this case is **STAYED** pending arbitration. The Parties **SHALL FILE** a joint status report with the Court every **NINETY (90) DAYS** until the arbitration has concluded.

**ORDER ENTERED** at Augusta, Georgia, this 26th day of October, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

8